Filed Jan. 25, 1894.

———————◆———————

No. 987.

THE LOUISVILLE, EVANSVILLE AND ST. LOUIS CONSOLIDATED RAILROAD COMPANY v. BERRY.

EVIDENCE.—*Expert and Opinion Testimony.—When Properly Excluded.* —Where all the facts of a case are susceptible of being placed before the jury, and the jury are as capable of drawing inferences therefrom as are expert witnesses, it is not error to exclude opinion or expert testimony.

SAME.—*Action by Parent for Death of Child.—Declarations of Child.— Admissions.—Contributory Negligence.*—In an action by the father for damages for the death of his child, declarations of the decedent can not be considered as admissions binding on the plaintiff, in the sense of admitting away plaintiff's right; but such declarations may be considered, however, on the question of contributory negligence.

SAME.—*Conflicting Evidence.—Appellate Court Practice.*—Where the evidence is conflicting on a vital point, the appellate tribunal will not disturb the finding and judgment.

APPELLATE COURT PRACTICE.—*Points Relied on Must be Made in Original Briefs.—Petition for Rehearing.—Practice.*—A party may, on petition for rehearing, adduce additional authorities and arguments in support of the points properly made in the original briefs; but all points relied on to overthrow a judgment must be properly pre-

sented in the briefs originally filed, and no new points can be made on rehearing.

Opinion on petition for rehearing by LOTZ, J.; dissenting opinion by Ross, J.

From the Dubois Circuit Court.

*J. E. Iglehart, E. Taylor, J. L. Bretz* and *W. E. Cox,* for appellant.

*A. J. Padgett, W. R. Gardner, C. G. Gardner* and *S. H. Taylor,* for appellee.

LOTZ, J.—This case is before this court for the second time. *Louisville, etc., R. R. Co.* v. *Berry,* 2 Ind. App. 427.

The character of the case, and the issues joined, are there stated, and need not be repeated here.

After the reversal of the cause, the case was again tried in the circuit court, before a jury, and resulted in a verdict and judgment in favor of the appellee in the sum of $1,067.

The only error assigned on this appeal is that the trial court erred in overruling the motion for a new trial.

The appellant produced a witness, who was its foreman, and under whom the deceased worked. The said witness testified that he informed the deceased of the dangerous character of the work about the steam plugs, and instructed him how the work should be done.

Appellant then produced another witness, who testified that he was a locomotive engineer of eight years' experience, and was familiar with the character of the work at which the deceased was engaged at the time he met his death; and then propounded to such witness this question: "I will ask you whether or not it was careless for a young man to go under an engine and attempt to tighten a plug when it was leaking steam and hot water?"

An objection was sustained to this question, and appellant then offered to prove by the witness that it was careless conduct on the part of the deceased to go under the engine and attempt to tighten the plug when it was leaking steam and water.

This offer was excluded, and proper exceptions were taken.

The contention is, that as the work, which necessity required should be done, was highly dangerous, the manner in which it was done became important; that the hazard and want of care involved in the method adopted by the deceased were not matters of common knowledge, and hence the necessity for expert and opinion evidence.

It is no unusual procedure for an expert witness to state his opinion as to whether or not certain conduct was proper or improper, skillful or unskillful. And it is sometimes proper for a nonexpert witness to give his opinion based upon his personal observation and experience as to the effect of certain conditions and facts. *Clinton* v. *Howard*, 42 Conn. 294; *Bennett* v. *Meehan*, 83 Ind. 566.

The questions the jury were required to determine, under the issues of this case, were whether or not the appellant had been guilty of negligence, and whether the deceased was free from contributory negligence. Negligence is the absence or want of that degree of care that an ordinarily prudent person would exercise under given conditions.

The jury is selected from the body of the community, and is generally composed of men of varied vocations and experiences. It is assumed that they know more of the common affairs of life, and can draw wiser and safer conclusions than can any one man. Hence, ordinarily,

negligence is peculiarly a question for the jury. All of the facts of this case were susceptible of being placed before the jury (the different methods of doing the work, and the means used), and from them the jury was as much, or more, capable of determining whether the deceased was careless, as was the expert witness. There was no error in excluding this testimony.

The only other cause for a new trial discussed by appellant is that the verdict is contrary to law.

Immediately after the accident occurred, the deceased was placed on a chair twenty-five or thirty steps away from the place of the accident. He was suffering intensely, and was laboring under great excitement.

Three witnesses for appellant testified that when he reached the chair he was asked how the accident happened, and that he answered substantially as follows: "I am a dead man, but nobody is to blame but myself. I turned the plug the wrong way and it came out."

On the first trial of the cause, the court struck this testimony out and withdrew it from the jury. This court held, in the former opinion, that this declaration of the deceased was proper evidence, not as an admission binding upon the plaintiff, but as a part of the *res gestæ*.

In the former opinion, this language was used: "In the case at bar the injury sued for was originally and primarily inflicted upon the appellee, and no part of the damages described in the complaint, and awarded by the jury, could have been recovered by the deceased had he survived the injury. *Mayhew* v. *Burns*, 103 Ind. 328. His services, during his minority, belonged to the appellee, as his lawful right, and it was not within the power of the deceased son to have legally defeated this right. Consequently, upon the clearest principles of law, the admissions of the deceased could not bind the appellee. As bearing somewhat upon this question, see *Penn*.

*etc., Life Ins. Co.* v. *Wiler*, 100 Ind. 92; Lawson's Rights and Remedies, section 1108."

Appellant assails the correctness of the statement above quoted, in so far as it states "that the admissions of the deceased could not bind the appellee," and insists that the authorities cited do not sustain it.

The assault is not well founded. The word admission is here used in the sense of a declaration against interest. As in the nature of things it was not possible for the deceased to have any interest in the subject-matter of this controversy, his declaration could not admit away a right he did not possess. His declaration, however, may be considered for another purpose, as was held in the former opinion.

It may be conceded that the appellee is not entitled to recover in this action unless he proves not only that the appellant was guilty of negligence, but, also, that the deceased was free from contributory negligence. It is claimed that the testimony of these three witnesses, on the point that the deceased made the declaration, is uncontradicted, and that, therefore, the facts contained in the declaration are undisputed facts; that such facts conclusively show the deceased to have been guilty of contributory fault; and that the verdict should have been for the appellant.

We are asked to reverse the case on the evidence. When the facts are undisputed, and only one legitimate inference arises therefrom, then negligence or no negligence may be ruled as a matter of law.

If the declaration was all the evidence given in the case bearing upon the question of contributory fault, then appellant's position would be correct; but there was other evidence given which tended to show that the deceased was free from fault.

Louisville, Evansville and St. Louis Consolidated R. R. Co. v. Berry.

There was a conflict in the evidence, and this court can not disturb the verdict under such circumstances.

Judgment affirmed, at the costs of appellant.

Filed Nov. 23, 1893.

### OPINION ON PETITION FOR A REHEARING.

LOTZ, J.—The appellant has presented a petition for a rehearing in this cause. In their brief in support thereof counsel for appellant respectfully, but bitterly, complain of the opinion of the court affirming the judgment.

They quote from section 25 of the act creating and defining the jurisdiction of this court (Acts 1891, p. 44), these words: "The court created by this act shall be governed in all things by the law as declared by the Supreme Court of this State, and it shall not directly nor by implication reverse or modify any decision of the Supreme Court of this State."

And, then continuing, counsel further say: "If the opinion herein rendered shall stand, it will result in confusion and conflict of authority; will reverse and overthrow the settled law and authorities of this State as declared by the Supreme Court, and set at variance the organic law of this court. It will open a field without limit, wherein wrongs shall be the basis of recovery for money damages, where the wrongdoer, in the attempt to exercise such supposed right, by firm rules of jurisprudence of this State, has no standing. Speculation, nay, even fraud, will be a firm foundation for enforcing unjust claims."

Strong as this language is, it is none too severe if our decision actually transgresses the organic law of this court, and if it will probably produce the confusion and wrongs here portrayed. In view of these animadversions and the earnestness with which counsel assail our

Louisville, Evansville and St. Louis Consolidated R. R. Co. *v.* Berry.

former opinion, we deem it proper to reëxamine more at length the question involved.

In the opinion announced by the court, we did not deem it necessary to state the character of the issues joined, but rested content by alluding to the fact that the issues were stated on a former appeal and needed no repetition.

But, that we may keep the issues joined well in hand, we here repeat what was there stated: "The complaint alleges, in substance, that Henry E. Berry, the plaintiff's son, was eighteen years of age, and was employed by the defendant to work in its engine house at Huntingburg as an 'engine washer,' which was a reasonably safe employment; that said Henry was inexperienced, and unfamiliar with machinery, and unacquainted with the dangerous character of engines and boilers; that the defendant had in use upon its railroad an old, worn out engine, the boiler of which had been constructed with holes in it for the purpose of cleaning it out, and these holes were kept closed while the engine was in use by means of brass plugs, known as 'mud plugs,' screwed into the rim of the boiler; that these plugs became so worn and deficient that the boiler leaked steam and water, and it was very dangerous to undertake to tighten them while the boiler was filled with hot water and steam; that said Henry was ignorant of such danger, and on the 12th day of June, 1887, while the boiler was in such dangerous condition, an employe of the defendant, who was foreman of the engine house, and under whom the said Henry worked, carelessly and negligently directed him to go under such engine and tighten the mud plugs, and in obedience to such direction he undertook to do so, and while so engaged, and without fault upon his part, one of the plugs was blown out by the pressure in the boiler and said Henry was burned and scalded with es-

70    APPELLATE COURT OF INDIANA,

Louisville, Evansville and St. Louis Consolidated R. R. Co. v. Berry.

caping steam and hot water so that he died soon there-
after. It is also averred that the plaintiff was ignorant
of the danger, and that his said son was sent under the
boiler without his knowledge or consent, and that the
injury occurred without his fault.

"No demurrer was filed to the complaint, and an an-
swer of general denial put the cause at issue." *Louis-
ville, etc., R. R. Co.* v. *Berry*, 2 Ind. App. 429.

The complaint was not questioned in the court below,
nor is it assailed on this appeal. The only error as-
signed is the overruling of the motion for a new trial.

Several causes for a new trial were presented by the
motion, but appellant's counsel considered and discussed
only two in their original brief.

The first was the alleged error of the court in refusing
to permit the appellant to prove by opinion evidence that
it was careless conduct for the said Henry to go under
the engine and attempt to tighten the plug when it was
leaking steam and hot water. The correctness of the
conclusion reached by us in our former opinion on this
point is not questioned in the petition for a rehearing.

The second cause discussed was, that the verdict was
contrary to law, and under this assignment only one
point was made, that is, that the deceased was guilty of
contributory negligence. No point was made on the evi-
dence that the appellant was not guilty of negligence, or
that the deceased assumed the risks of the employment.

Whatever was said in our former opinion on the ques-
tion of the appellant's negligence was only said inci-
dentally.

It is the policy of the law to require the party who
seeks to overthrow a judgment to present all questions
in the briefs originally filed, and not to permit new
points to be made on a rehearing. The cases which so
hold are almost numberless. This rule is a salutary one,

Louisville, Evansville and St. Louis Consolidated R. R. Co. *v.* Berry.

dictated by considerations of justice and expediency. If parties were permitted to submit their cases in piecemeal, confusion and delay would be the inevitable result.

A party may, on petition for rehearing, adduce additional authorities and arguments in support of the points properly made in the original briefs.

"If, however, he has not specifically stated.the points in his original brief, he can not, without a violation of the rule, be allowed to make them on a petition for a rehearing. A party can not, however, be regarded as having stated a point where he does no more than assert, in general terms, that a ruling was erroneous. He must state specifically the point which shows the ruling to be wrong, for a mere general assertion that a ruling is wrong is not "the making of a point." Elliott's App. Proced., section 557.

In the original brief the appellant produced no argument, cited no authority, and, indeed, did not even allude to or suggest that the evidence failed to show that it was guilty of negligence, or that the said Henry assumed the risk. Such points not having been made, we did not consider them in our former opinion. When counsel, so able and astute, so true and devoted to the interests of their client, did not deign to make such points, this court might well rely upon the presumption that no such points existed, or, if suggested by the record, that they were not tenable. That the failure to discuss a cause or make a point constitutes a waiver, is a rule familiar to the merest novice in the law. A judgment of the circuit court, when on appeal in this court, is surrounded with strong presumptions in favor of its validity. All reasonable presumptions and intendments will be made in favor of the rulings and decisions of the trial court. This rule is well grounded in the elementary principle, that official acts are presumed to have been

rightfully performed. This presumption is redoubled in the case of a judgment rendered by a court of general jurisdiction, for a court acts impartially upon full information and after due consideration. The law rightfully casts the burden upon those who assail a judgment, to make the error manifest. Elliott's App. Proced., sections 710 and 711.

The statute, section 658, R. S. 1881, forbids the reversal of a judgment in whole or in part, where it appears to the court that the merits of the cause have been fairly tried and determined in the court below. In order to comply with this statute, this court will search the record for the appellee, for the purpose of sustaining the judgment of the lower court; but it will never go beyond the brief of the appellant in quest of errors to overthrow a judgment. *Martin* v. *Martin*, 74 Ind. 207 (210).

It is the policy of the law to put an end to litigation as speedily as possible. The strife, the contention, the ill-feeling frequently engendered by lawsuits are detrimental to the best interests of society. The law discourages their maintenance and seeks to terminate them quickly. From this principle has sprung the maxim, *"Interest republicæ ut sit finis litium,"* it concerns the State that there be an end of lawsuits.

This principle reaches back through the whole history of English jurisprudence, and is found strongly grounded in the civil law of Rome. If an appellate court should disregard this most salutary rule, and voluntarily go beyond the contentions of the appealing party in search of errors or excuses to overthrow a judgment, it would prolong, foster, and encourage litigation, and soon sink into deserving contempt. The former opinion of the court adhered strictly to the rule that this court will not go beyond the brief of the appellant in quest of errors to overthrow a judgment.

Louisville, Evansville and St. Louis Consolidated R. R. Co. v. Berry.

The principal point made by the appellant's counsel in their original brief was, that the evidence showed that Henry Berry, the deceased, was guilty of contributory negligence.   They concede as much now.

In their brief in support of this petition, they say: "Was appellee's decedent free from contribution thereto, or did decedent's acts help to cause or bring about the injuries which he received?   Was his acts the proximate cause thereof?   This is the controlling question."

In our former opinion we stated that there was a conflict of evidence upon the question of contributory negligence and declined to weigh it.   It is fundamental that an appellate court will not disturb the judgment of the trial court upon a question of fact, when the evidence relating thereto is conflicting.   This position needs no citation of authorities to support it.   If so disposed, we could array an almost endless number.

We may have been mistaken as to the fact that there was a conflict, but if so, it hardly justifies the assertion that if the opinion announced by the court shall stand "it will reverse and overthrow the settled law and authorities of this State, as declared by the Supreme Court, and set at variance the organic law of this court."

A mistake of fact is not a mistake of law.   If we were correct in our conclusion that there was a conflict in the evidence, then our former decision is in harmony with the former decisions of this court, of the Supreme Court of this State, and of every other court of any respectability or standing.

Counsel for appellant, further complaining of the opinion, intimate that the court inconsiderately disposed of the case by briefly stating that "There was a conflict in the evidence, and this court can not disturb the verdict under the circumstances."

This remark was made with reference to the question

of contributory fault.   In response to this intimation we desire to say that this remark was not made as a mere passing observation, an idle declaration, or a flippant *ipse dixit;* but was made after the most careful painstaking examination, and conscientious consideration of the record before us.   We did not deem it necessary then to state at length the reasons that impelled us to that conclusion. When a cause is affirmed, the statute does not require us to state the reasons for decision.   But, in view of the character of assault made upon the opinion, we deem it proper to review the evidence.

The undisputed facts of this case are, that in the year 1887 the appellant was the owner of, and engaged in operating, a railroad, and had its round house and machine shop located at Huntingburg, Dubois county.   It employed Henry E. Berry as a boiler washer.   At the time of his employment, he was about eighteen years of age.   The duties of a boiler washer were to take charge of an engine when it was brought into a round house after having been out on a run; and to blow off the steam and water, remove the mud plugs, and to wash it out. After the boiler had been cleaned, it was his duty to replace the plugs and fill the boiler with water.

The appellant owned and used a locomotive engine of the Norris make or pattern.   It was built in the year of 1854.   It was inferior in size and capacity, as compared with locomotives of more recent make.   With age and use, it had become defective.   It was only used for light work.   It had been, on several occasions, sent to the shop for repairs, and had been overhauled and repaired several times.   In 1887 it was in use on the Rockport branch of the appellant's line of road.   It became out of repair, and was sent to the shop at Huntingburg for the purpose of being repaired.   It was placed in the round house, and stood there for the period of about one month,

and was a "dead engine," not fired up or used during that time, but was awaiting repairs.

On the 12th day of July of that year, the appellant needed a locomotive engine to make a trip to Jasper, and, having no other that could be spared for that purpose, the round house foreman ordered this engine to be fired up. The hostler fired it up, and it was then moved from the round house out on the track, and stood between the round house and the turn table. There was a pressure of about eighty pounds of steam in the boiler. Steam and hot water were leaking from one of the mud plugs at the rear end of the boiler. The escaping steam made considerable noise. The round house foreman and several other persons were present. Henry E. Berry was some distance away, but where he could see the leak. It was the duty of the foreman to look after the repairs of the engine, and to see that the men about the house did the work assigned to them. The foreman was making arrangements to tighten the mud plug with a wrench. Henry went under the engine to tighten the plug. The plug fitted into the leg of the boiler by means of a screw with threads on the plug and also in the rim or shell of the boiler. When Henry placed the wrench upon the plug it came out, and the hot water and steam flowed upon his body, badly scalding him about the face, back, and arms. He was removed to a chair about fifty feet away when his clothing was partly removed and oil applied to his body. He was taken from there to his father's house shortly afterwards. The injuries were inflicted about 4 o'clock P. M., and he died about 10 o'clock of the same evening. Henry had been working for the appellant, at the time he met his death, about three months, in the capacity of a boiler washer, and he had been instructed as to his duties, the manner of their per-

formance, and informed of the dangers attending the same.

Upon the other points, the evidence was conflicting. There was evidence which tended to prove that Henry went under the engine by the direction and express command of the foreman.   There was evidence which tended to show that the threads on both the plug and the shell of the boiler were badly worn and broken down, and that a wrench placed upon a plug when it was leaking steam and water would be liable to cause it to come out, no matter which way it was turned.

All of these conditions were controverted by the evidence of the appellant.   It was no part of the duty of the deceased to look after and repair the defect complained of.   It required a machinist to make such repairs, and the evidence shows that that duty devolved upon another.   The evidence does not satisfactorily establish that the deceased ever cleaned the boiler of this particular engine or that he ever fitted in the plugs.   If he did so at all, it was at least a month before the accident.   There was evidence which tended to show that the boiler was washed at Rockport before being sent to the shop for repairs.

Three witnesses for appellant testified that deceased stated immediately after the accident that "I am a dead man, but nobody is to blame but myself.   I turned the plug the wrong way and it came out."

In their original presentation counsel for the appellant, with remarkable legal acumen, ignored the minor question of appellant's negligence and the assumption of the risk by the deceased, and seized upon the most salient point for the reversal of the cause, that of contributory negligence, which, it is insisted, is established by the above declaration.   Other witnesses, who were present at the time of the accident and who testified as

to what was said and done by the deceased, made no mention of such declaration.

If it be conceded that appellant's witnesses were un-contradicted on this point, we do not think the declaration is entitled to the importance attached to it by the appellant. That portion of the statement, "but nobody is to blame but myself," is but the expression of an opinion and not the statement of a fact. If, as a matter of fact, the boiler was defective and unsafe, and the injury resulted from such defect, such opinion would not alter the fact. Nor does that part of the statement, "I turned the plug the wrong way and it came out," conclusively establish contributory negligence, for three expert witnesses for appellee testified, that when the threads of a plug are worn and is leaking steam and water, it is liable to come out when turned either way. Again, the uncontradicted evidence showed that it was no part of the usual duty of the deceased to tighten up the plugs after the engine was fired up to make a run. His duty was confined to blowing off steam and water, cleaning the boiler, and replacing the plugs. His duty required him to replace the plugs at a time when there was neither water or steam in the boiler. There was evidence tending to show that the round house foreman, who was the immediate superior of the deceased, commanded him to get a monkey wrench and go under the boiler and tighten the plug. There was also evidence given which tended to show that the deceased made this statement to his father before his death, "You told me, father, when I was employed, to obey instructions of my superiors, and, in obedience to the command of Mr. Warren, I went under the engine."

This latter evidence, although it may not have been proper, appellant took no exceptions to its admission, and it was before the jury for their consideration. We

think the jury might have inferred the want of contributory negligence on the part of the deceased. Although not necessary to the decision of this case, we may say, in support of the presumption in favor of the validity of the judgment of the circuit court, that there was evidence from which the jury might have inferred negligence on the part of the appellant, and that there was no assumption of the extraordinary risk on the part of the deceased.

Within the whole range of judicial inquiry, there are but few questions that are more peculiarly and exclusively within the province of the jury than those of negligence and the want of contributory negligence.

True, there are cases, when the facts are undisputed and only one inference can be legitimately drawn, in which the court may, as a matter of law, rule negligence or no negligence, contributory fault or the want of contributory fault. But such cases are rare and exceptional. If the facts are in dispute, it is the province of the jury to determine them. But it frequently occurs that the facts are undisputed or conceded, and still the question of negligence or want of contributory negligence is one for the jury. If, from such facts, two inferences legitimately arise, the law recognizes the superior ability of the jury to determine which inference shall prevail. An act, under some circumstances, may constitute negligence, while the same act, under different circumstances, may not constitute negligence at all.

The jurors, in their callings and experiences, have usually come in contact with, and observed, the conduct of men under varied conditions. It is this diversity which gives value to their unanimous judgment. Collectively, they are more capable of determining how an ordinarily prudent man would act under given conditions than judges of courts, whose experiences are usually

confined to one calling, and who are proverbially prone to generalize and follow precedents.

We have adverted to these principles for the purpose of calling attention to the difficulties that beset a court, and especially an appellate court, when it is asked to disturb the verdict of a jury on the question of contributory negligence. The trial court is clothed with supervisory powers over questions of fact arising on the trial. It may weigh the evidence, as well as the jury, and if, in its judgment, the jury has made a mistake, it may grant a new trial.

An appellate court will not weigh the evidence when it is conflicting, and an appellate court should not disturb the verdict of a jury, when, from the undisputed facts or from the probable proven facts, two inferences may be legitimately drawn. To do so would be to substitute the judgment of the court for that of the jury, and subvert the whole theory of the law bearing upon this subject.

Petition overruled.

Filed Feb. 22, 1894.

## DISSENTING OPINION.

Ross, J.—I can not concur in the opinion of the majority of the court for several reasons, namely: First. Because the deceased was injured in the performance of his duties, by reason of a danger which was an incident of the service, with the hazards of which he was familiar. Second. The evidence wholly fails to show any negligence of the appellant, which caused the injury, and, third. There is no evidence, either direct or circumstantial, from which a jury might reasonably infer that the deceased was free from fault, while there is positive, unqualified and undisputed evidence that the injury was the result of his own acts alone.

Ordinarily, it would seem unnecessary to cite authorities to sustain the legal propositions upon which my reasons for dissenting, as above enumerated, are based, but I deem it necessary here, in view of the fact that the opinion announced by the majority of the court, not only ignores, but overrules, legal principles long and firmly settled in every State of the Union, except, perhaps, in those States where the rule of degrees of negligence prevails. For the purposes of this opinion, however, I will not attempt to collect the decisions of the courts of other States, but will simply cite those of our own courts.

A servant, engaging in the service of a master, assumes all the risks naturally incident to the services to be performed. *Taylor* v. *Wootan*, 1 Ind. App. 188; *Parke County Coal Co.* v. *Barth*, 5 Ind. App. 159; *Indianapolis Union R. W. Co.* v. *Ott*, 35 N. E. Rep. 517; *Lake Shore, etc., R. W. Co.* v. *McCormick*, 74 Ind. 440; *Brazil, etc., Coal Co.* v. *Cain*, 98 Ind. 282; *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18; *Griffin* v. *Ohio, etc., R. W. Co.*, 124 Ind. 326; *Brazil Block Coal Co.* v. *Hoodlet*, 129 Ind. 327; *Louisville, etc., R. W. Co.* v. *Hanning, Admr.*, 131 Ind. 528.

This principle applies as well to the employment of minors as to adults. *Taylor* v. *Wootan, supra; Louisville, etc., R. W. Co.* v. *Berry*, 2 Ind. App. 427; *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151.

In order that the appellee should be entitled to recover, it was necessary for him to prove, not only that the appellant was negligent in the performance of some duty owing from it to the deceased, but that such negligence of the appellant was the proximate cause of the injury complained of. *Pennsylvania Co.* v. *Hensil*, 70 Ind. 569; *City of Greencastle* v. *Martin*, 74 Ind. 449; *Pittsburgh, etc., R. W. Co.* v. *Conn*, 104 Ind. 64.

He must also prove that the deceased in no way con-

Louisville, Evansville and St. Louis Consolidated R. R. Co. *v.* Berry.

tributed to his own injury. *Toledo, etc., R. W. Co.* v. *Brannagan, Admx.*, 75 Ind. 490; *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer*, 99 Ind. 486; *Indiana, etc., R. W. Co.* v. *Green, Admx.*, 106 Ind. 279.

The contributory negligence of a minor will defeat his right to recover, the same as if he were an adult. *Stewart* v. *Patrick*, 5 Ind. App. 50; *Chicago, etc., R. W. Co.* v. *Harney*, 28 Ind. 28; *Atlas Engine Works* v. *Randall*, 100 Ind. 293, and cases cited.

The undisputed facts in this case are, that three months prior to the receipt of the injury complained of the deceased, a boy eighteen years of age, grown and fully developed physically and mentally, was employed by the appellant as "boiler washer," whose duty it was, among other things, to go under the engines, remove the plugs, and clean out and wash the boilers, and then to replace the plugs and see that they were safe; that the deceased, at the time he took employment, was warned of the dangers incident to the services he was to render, and fully directed as to how the work should be done, in addition to which an experienced man accompanied him and showed him how to perform his duties.

On several other occasions prior to his injury, the deceased was warned of the dangers of his undertaking and fully instructed concerning the manner in which he should do the work and not run any unusual risk of being injured; that a short time prior to his injury he went under the engine which was afterward the cause of his injury, and, removing the mud plugs, cleaned and washed the boiler, preparatory to the engine being steamed up and sent out upon the road.

After the engine was steamed up, it was discovered that steam was escaping from the mud plug which he had

taken off in cleaning the boiler, but whether the escape was caused by its not having been screwed back on sufficiently tight by him, or because improperly put on by getting the threads crossed, or because the threads were so worn that they would not hold securely, is not clear, as the evidence upon this point is conflicting; that the deceased took a wrench and went under the engine for the purpose of tightening the plug, and while in the act of so doing was so badly scalded and burned that he shortly afterwards died from the effects thereof. Whether he went under the engine in obedience to the direction of the appellant's "round-house foreman," or of his own accord and unknown to any of appellant's other employes, is also uncertain on account of a conflict in the evidence.

From these facts it is impossible to say that the appellant was remiss in any duty owing to the deceased. It can not be said that *it* was negligent in furnishing him with defective machinery, because it was his duty to look after and repair the defect complained of, and the evidence shows that it was the deceased himself who put in the plug which either blew off or was taken off by him, permitting the steam to escape, resulting in his injury.

Although the deceased was a minor, the evidence shows that he was of sufficient age, intelligence and experience to understand the dangers of the service and the necessity for being careful in the performance thereof. If, by his own mistake or negligence, he was injured, he would have no right of action against the appellant. If the deceased could not have recovered had he lived, the appellee can not recover.

To hold the appellant answerable to a servant for his own acts, is contrary to all known law.

But another, and equally fatal, objection to appellee's

right to recover is presented by the evidence, in that three witnesses testified that the deceased, immediately after the accident, said "There is no one to blame for this but myself. I turned the plug the wrong way." This evidence is not only uncontradicted, but is all the evidence pro or con upon the subject as to whether or not the deceased was free from fault.

It is the opinion of the majority of the court that, although this was all the evidence upon that question, yet the jury had a right to disbelieve it if they saw fit and find that it was not his fault, but the fault of appellant.

To sustain a verdict, in a case of this character, where neither the affirmative evidence nor the circumstances show freedom from contributory negligence of the injured party, is to overthrow a principle firmly settled by the decisions of the Supreme Court of this State. The right to overrule the Supreme Court was specially withheld from this court by the Legislature when it created the court. Section 25 of act approved February 28, 1891 (Acts 1891, page 44).

I think the judgment of the court below should be reversed and a new trial granted.

Filed Nov. 23, 1893.