## W. L. DOWELL, Administrator, v. CITY OF RALEIGH.

### (Filed 21 March, 1917.)

**1. Municipal Corporations—Cities and Towns—Negligence—Defective Streets —Instructions—Appeal and Error.**

In an action against a municipality for the alleged negligent killing of an intestate, who was thrown from his falling wagon, caused by a defective street, indefinite evidence was admitted, without objection tending to show other defects in the street. *Held*, it should be confined to similar defective conditions in the immediate vicinity of the occurrence as tending to show the existence of the particular defect causing the injury, and actual or constructive notice thereof to the municipal authority; but an instruction that entirely excludes such evidence, which was admitted without objection, from the consideration of the jury is reversible error to the plaintiff's prejudice.

**2. Evidence—Declarations — Wrongful Death — Negligence — Executors and Administrators—Trusts and Trustees—Statutes.**

While the statute requires the personal representatives of the deceased to bring action for damages for his negligent killing, he acts in such respect in the nature of a trustee for the beneficiaries under the statute, the right of action depending entirely upon the statute, operating after the death, in which the decedent can have no interest; therefore, his declarations made as to the character or cause of the occurrence are inadmissible as substantive evidence.

**3. Municipal Corporations—Negligence—Defective Streets—Notice.**

A municipality is not liable in damages caused by a defective condition of its street unless it is shown that it had actual or constructive notice thereof. *Fitzgerald v. Concord*, 140 N. C., 110.

**4. Same—Contributory Negligence—Burden of Proof.**

In an action against a municipality to recover damages for an alleged negligent death of an intestate, where there is supporting evidence, the jury must find that there was a dangerous defect in the street, thereby reason of defendant's negligence, or its failure to repair, after actual or constructive notice, and that it, and not the defective wagon, from which the intestate was thrown, if such was defective, was the proximate cause; the burden being upon plaintiff to show negligence, and upon defendant to show contributory negligence.

Civil action, tried before *Connor, J.*, and a jury, at June Term, 1916, of Wake, and brought for the recovery of damages for the wrongful death of the plaintiff's intestate, alleged to have been caused by the defendant's negligence in failing to keep one of its streets in a reasonably safe condition. It appears that in the morning of 22 March, 1914, R. L. Johnson, plaintiff's intestate, was driving along South Street in the city of Raleigh, in a milk wagon drawn by a horse; that the king-bolt was broken and the body of the wagon was detached and

fell, and Johnson, who was then sitting in the wagon, was thrown through the glass front of his wagon to the ground. He was taken up in an unconscious condition and in a few moments thereafter died. There was evidence on the part of the plaintiff that in South Street at the point where the wagon fell to the ground there were three ditches, or excavations, across the street on the south side thereof, not far apart, and that when a vehicle ran into and across the ditches, or excavations, the front wheels would enter one about the time the rear wheels entered another; that this caused very violent and successive jerks of the wagon; that the first excavation to the south was from 6 to 8 inches in depth; the second excavation from 8 to 10 inches in depth, and a third, at the place where the wagon body fell to the ground, was from 8 to 10 inches in depth. On the morning in question the street was covered with a light snow, which had been blown into the ditches and excavations, completely covering the same and leaving the street, to all appearances, safe for travel. There was also evidence tending to show that South Street was one of the much traveled streets of the city, and that at other points in the street there were holes and excavations which rendered the same unsafe. There was a policeman's call-box near the holes or excavations where Johnson was killed which required policemen of the city to come to the place at short intervals of time. The defendant denied all negligence and introduced evidence tending to show that the holes in question were of slight depth and that the street at this particular place was in a reasonably safe condition for travel. The usual issues in actions for negligence were submitted to the jury.

The judge instructed the jury in part as follows: "You will exclude from your consideration any and all testimony as to the condition of South Street or any part of it other than the place where it is admitted that the wagon fell, for, notwithstanding that the street may have been in bad condition elsewhere and that the defendant may have been negligent as to the condition elsewhere, that would not make the defendant liable to the plaintiff in this case. So your inquiry will be, first, What was the condition of the street immediately at the point at which the wagon fell? Were there defects in the street? Were these defects such as to render passage over the street unsafe?" In this connection it may be stated that there was evidence that South Street was in worse condition at other places than it was at the place where the intestate's injuries were received.

The jury answered the first issue "No," that is, that there was no negligence. Judgment was entered for the defendant, and plaintiff appealed.

*Douglass & Douglass and R. N. Simms for plaintiff.*
*No counsel for defendant.*

DOWELL *v.* RALEIGH.

WALKER, J., after stating the case: There are two questions to be considered in this case:

1. As to the condition of the street at places other than the one where the accident occurred. The court admitted the proof, or rather it seems to have been let in without any objection. It may be that in its present form it was not competent, as it extends to the entire length of the street and is not restricted to that part of it near the place where the intestate was killed. We find this stated in one of the authorities: "For the purpose of proving or disproving negligence with respect to the particular defect or obstruction which caused the injury, evidence of similar defects, obstructions, or conditions existing at other places, or of like conditions, obstructions, or methods in other cities, is ordinarily inadmissible. But evidence of similar defects, obstructions, or conditions in the immediate vicinity under like conditions is admissible as tending to show the existence of the particular defect or obstruction, or to fix constructive notice thereof on the municipality. Thus such evidence is generally held admissible where the accident or injury occurs on a sidewalk of uniform construction and material for considerable length, and the other defects or condition offered in evidence were in the same walk and vicinity." Nor does it appear to what extent the other portions of the street were defective, nor whether the alleged defects were near to or remote from the one in question. We need not pass upon the admissibility of this evidence, because there was no objection to it, and, therefore, express no opinion in regard to it. But plaintiff excepted to the instruction of the court relating to it, and we must ascertain if the benefit of it was taken away from him by the charge. The learned judge was right in stating that a defect at any other place in the street would not create a liability unless they found that by reason of defendant's negligence there was a defect at the place where intestate was thrown from the wagon, and that his death was proximately caused by it; but the language of the court went beyond this, as we think, and excluded the evidence from the consideration of the jury. It is likely that it was not so intended, but that is the fair construction of it.

2. The declaration of the intestate as to the condition of the wagon was incompetent. It was not a declaration against interest, as at that time he had no interest to serve or disserve. He had no cause of action himself, as his death was instantaneous, nor did he even have any interest in this cause of action. It is one not known to the common law, but created by the statute, and the beneficaries take, not by any inheritance or succession from him, but solely because they are named in the statute as the recipients of the fund recovered for the death caused by the defendant's negligent or wrongful act. The cause of action never

arose until the death of the intestate, and then not to him, but to those who are designated by the statute to take the fund recovered. They acquire their right by the statute alone, and not because of any privity with the intestate, for none such exists between them, in any proper sense of that term. This·is well settled by our decisions. *Baker v. R. R.,* 91 N. C., 308; *Taylor v. Cranberry Co.,* 94 N. C., 526; *Best v. Kinston,* 106 N. C., 205; *Killian v. R. R.,* 128 N. C., 261; *Hartness v. Pharr,* 133 N. C., 571; *Bolick v. R. R.,* 138 N. C., 371; *Gulledge v. R. R.,* 147 N. C., 234; *Hall v. R. R.,* 146 N. C., 345; *Bennett v. R. R.;* 159 N. C., 345; *Broadnax v. Broadnax,* 160 N. C., 432; *Hood v. Tel. Co.,* 162 N. C., 92; *Hartis v. Electric Railway Co., ibid.* 236. In *Hood v. Tel. Co., supra,* the Court said: "The right of action for wrongful death, being conferred by statute at death, never belonged to the deceased, and the recovery is not assets in the usual acceptation of this term." And in *Hartness v. Pharr, supra,* we said: "Whatever the varying forms of the statutes may be, the cause of action given by them, and also by the original English statute, was in no sense one which belonged to the deceased person, or in which he ever had any interest, and the beneficiaries under the law do not claim by, through, or under him; and this is so although the personal representative may be designated as the person to bring the action. The latter does not derive any right, title, or authority from his intestate, but sustains more the relation of a trustee in respect to the fund he may recover for the benefit of those entitled eventually to receive it, and he will hold it, when recovered, actually in that capacity, though in his name as executor or administrator, and though in his capacity as personal representative he may perhaps be liable on his bond for its proper administration." This passage was quoted recently with approval in *Broadnax v. Broadnax, supra,* as was the following from *Baker v. R. R.,* 91 N. C., 310: "The administrator thus occupies the place of trustee, for a special purpose, of such fund as he may obtain by the suit, holding it, when recovered, solely for the use of those who are entitled under the statute." Our statute prescribes the method of paying out the fund, but the latter is free from the claims of legatees and creditors. The beneficiaries derive their right, therefore, as we have said, not from the intestate, but under the statute. These views are sustained by other courts, which hold that the cause of action created by statute for death caused by negligence is independent of any right of action the deceased may have had, or would have had if he had survived the injury. *C. and O. R. R. Co. v. Dixon,* 179 U. S., 754; *Dennick v. C. R. Co.,* 103 U. S., 11; *I. C. R. Co. v. Barrow,* 15 Wall., 90. Upon the subject of admissions or declarations of the deceased before or after the accident which caused his death, Tiffany on Death by Wrongful Act (2 Ed.), sec. 194, says: "The

declarations of the deceased, although made under such circumstances as would, upon an indictment for homicide, render them inadmissible as dying declarations, are inadmissible on that ground. Whether the declarations of the deceased are admissible in favor of the plaintiff will depend upon whether they were made under such circumstances as to form part of the *res gestæ*. It would seem that such declarations, if not admissible as part of the *res gestæ*, are not admissible in favor of the defendant as admissions, since the plaintiff in such case does not claim in the right of the deceased, but upon a new cause of action." This is the prevailing opinion, though he admits that there are some cases to the contrary, but when they are examined it will be found that they rest upon the principle (or are largely influenced by it) that the declarations, by reason of the fact that they were made at the very time of the injury, or of their being concomitant therewith in some degree, and explanatory thereof, became *pars rei gestæ*. The following cases treat them as inadmissible: *Ohio and C. R. Co. v. Hammersley*, 28 Ind., 371; *Johnston v. Oregon, etc., R. Co.*, 23 Ore., 94; *Louisville, etc., R. Co. v. Berry*, 35 N. E., 565 (app. 28 Ind., 714); *L. and N. R. Co. v. Stacker*, 86 Tenn., 737; *Fitzgerald v. Town of Weston*, 52 Wis., 354 (9 N. W., 13). In the case last cited the Court held that where the widow brought an action to recover for the death of her husband, which was alleged to have been caused by defendant's negligence, any declarations she had made during the life of her husband after the accident were competent only to contradict her as a witness at the trial for herself, but were not competent as declarations against interest, even against herself as plaintiff in the action, to be used as substantive testimony, and the Court said: "Nor do we think they were admissible as being made by a party in interest, within the meaning of the rule. When the plaintiff made these declarations she had no interest in the cause of action against the town by reason of the injury to her husband, caused by a defective highway. It is only in consequence of his death, subsequent to such declarations, that she has the right of action under the statute. But, as we understand the rule, the declarations, to be admissible, must be against the interest of the person making them at the time when they were made. 1 Greenl. Ev., sec. 147." And to the same effect is *L., etc., R. Co. v. Berry, supra*, (35 N. E. at p. 566). "In the case at bar," said the Court, "the injury sued for was originally and primarily inflicted upon the appellee, and no part of the damages described in the complaint and awarded by the jury could have been recovered by the deceased had he survived the injury. *Mayhew v. Burns*, 103 Ind., 328, 2 N. E., 793. His services during his minority belonged to the appellee, as his lawful right, and it was not within the power of the deceased son to have legally defeated this right. Conse-

quently, upon the clearest principles of law, the admissions of the deceased could not bind the appellee. As bearing somewhat upon this question, see *Ins. Co. v. Wiler,* 100 Ind., 92; Lawson, Rights, Rem. and Pr., sec. 1108. Appellant assails the correctness of the statement above quoted in so far as it declares that the admissions of the deceased could not bind the appellee, and insists that the authorities cited do not sustain it. The assault is not well founded. The word 'admission' is here used in the sense of a declaration against interest. As in the nature of things it was not possible for the deceased to have any interest in the subject-matter of this controversy, his declaration could not admit away a right he did not possess." The court held that the evidence was competent as part of the *res gestæ,* and could be considered, therefore, on the motion to reverse upon the evidence—a very different question. In *Hartis v. Electric Ry. Co.,* 162 N. C., 236, a deposition taken in a suit by the injured party was permitted to be read in a subsequent action by his administrator after his death; but this was allowed upon the ground that the questions under investigation in the two suits were substantially the same and there had been full opportunity to cross-examine in the first case, and that the administrator was plaintiff in both actions. The principle now applied in this case was fully recognized there.

We conclude, therefore, that the court should not have admitted the declaration against plaintiff's objection.

But the city cannot be held liable unless it had or should have had notice of the defect, if one existed. "The governing authorities of a town are charged with the duty of keeping their streets and sidewalks, drains, culverts, etc., in a reasonably safe condition; and their duty does not end at all with putting them in a safe and sound condition originally, but they are required to keep them so to the extent that this can be accomplished by proper and reasonable care and continuing supervision. Code, sec. 3803; *Bunch v. Edenton,* 90 N. C., 431; *Russell v. Monroe,* 116 N. C., 720. The town, however, is not held to warrant that the condition of its streets, etc., shall be at all times absolutely safe. It is only responsible for negligent breach of duty, and, to establish such responsibility, it is not sufficient to show that a defect existed and an injury has been caused thereby. It must be further shown that the officers of the town 'knew, or by ordinary diligence might have discovered, the defect, and the character of the defect was such that injuries to travelers therefrom might reasonably be anticipated.' It will be observed that actual notice of a dangerous condition or defective structure is not required, but notice may be implied from circumstances,

and will be imputed to the town if its officers could have discovered the defect by the exercise of proper diligence." *Fitzgerald v. Concord,* 140 N. C., 110 (citing and quoting 1 Sh. and Redf. Neg., sec. 369).

Before a case of actionable negligence is made out, the jury must find, that there was a dangerous defect in the street; that it was there by reason of defendant's negligence, or its failure to repair, after actual or constructive notice of it; that it—and not the defective wagon, if the latter was defective—was the proximate cause of the intestate's death, the burden being on the plaintiff to show negligence and on the defendant as to any contributory negligence.

There will be a new trial for the error above indicated.

New trial.