RAMÓN MONTANER, as MANAGER OF THE STATE INSURANCE FUND, Appellant, *v.* THE INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Appellee, and PAULA TIRADO VILLOT, Petitioner before the Commission.

No. 154.    Argued January 9, 1939.—Decided May 12, 1939.

**742**

*Hon. B. Fernández García, Attorney General, Emilio de Aldrey, Assistant Attorney General, Víctor J. Vidal González, Legal Advisor of the State Fund, and G. Atiles Moréu, Assistant Legal Advisor,* for appellant. *M. León Parra* for appellee. *Ismael Soldevila* for petitioner before the Commission.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

Lorenzo Tirado, who was 80 years old and petitioner's father, lost his life as a consequence of injuries received when he fell off an ox-cart in which he was going to Central "Rufina" to collect a sum of money which the central paid him weekly. Tirado's fall was caused by a collision between the cart and a machine belonging to the central. The Manager of the State Insurance Fund refused compensation because: (*a*) the accident did not occur in the course nor as a consequence of any work which he was performing for the master; and (*b*) because Tirado was not an employee within the provisions of the Workmen's Compensation Law of the 18th of April 1935 (Act 45, Session Laws 1935, p. 251).

On April 28, 1938 the Industrial Commission reversed the decision of the Manager of the Fund and held that Lorenzo Tirado was an employee of an insured employer at the moment when he met his death and that his daughter, of 60 years of age, petitioner herein, was his beneficiary. Reconsideration was denied. On August 30, 1938 the Manager filed the present appeal alleging that the Commission erred:

1. In denying the admission in evidence of a statement sworn by Tirado before his death, in which he stated that he was not working for the central and that what he was getting was a mere gift.

2. In deciding that Tirado was an employee at the time of his death.

3. In deciding that petitioner depended on what Lorenzo Tirado earned for her livelihood.

4. In deciding without competent evidence that petitioner is unable to work.

5. In deciding that "in order to consider a person over 18 years of age as a dependent, all that is required is that she can not earn her living by her own work due to inability to work, produced by her age, sickness, etc."

6. In deciding that the limitation set forth in Section 3, subdivision 5, paragraph 5 of the Workmen's Compensation Act concerning the suspension of payments to beneficiaries, except the widow or widower, when they reach the age of 18 years, is only applicable to beneficiaries who are minors.

7. In refusing to admit in evidence the testimony of two witnesses with respect to what Tirado declared before his death, because it understood it was hearsay testimony.

We shall discuss the alleged errors joining those which involve similar questions.

■ 1 and 7. In the declaration offered in evidence and refused by the Commission the declarant stated that at the moment when the accident occurred he was going to the central "to collect the sum of $1.50 which said central used to give me when I did not work, and that week I had not worked at all, as I had not worked for about two months." And after narrating how the accident took place the declarant appears insisting in stating emphatically that he was not in the employment of the central, and says: "I repeat that I was not an employee of the Central Rufina because I do not want to work voluntarily."

The Commission held that that declaration made by the injured one two months after the accident, was not admissible in evidence as part of the *res gestae* nor under the rule set forth in section 93, subsection 1 of the Law of Evidence as a declaration made by Tirado against his own interest, because it was not offered against the interests of Tirado, but against a third person, his daughter, "whose right to compensation is not due to the fact that she is Tirado's heir, but to the fact that she is in the group which the Workmen's Compensation Act protects because of dependency."

It is evident that Tirado's declaration offered by the appellant was not admissible as part of the *res gestae,* because it was not contemporaneous with the act of which it is alleged to be part, but was the mere narration of past events. 22 C. J. 451, sec. 543; *Vicksburg & Meridan Railroad* v. *O'Brien,* 119 U. S. 99, 30 L. ed. 299; *Durkess* v. *Central Pacific R. R. Co.,* 69 Cal. 533; *Frye* v. *St. Louis, etc. R. R. Co.,* 200 Mo. 377, 98 S. W. 566; *Torres* v. *Domínguez Conde,* 35 P.R.R. 245.

In the case of *Sullivan* v. *Henry Guth. & Co.,* 148 Ill. App. 538, the Supreme Court of Illinois said:

"But there is also excellent authority for the rule that declarations or admissions of the decedent in a death action, except where the statute permits, and the action is founded upon, survival of the action which decedent would have had for pain and suffering between the time of the injury and the time of his death, are not admissible against deceased's representative or next of kin unless part of the *res gestae.* (Elredge v. Barton, 232 Mass. 183, 122 N. E. 272.) Thus, in a recent case, it is observed that the cause of action 'is one not known to the common law, but created by the statute, and the beneficiaries take, not by any inheritance or succession from him, but solely because they are named in the statute as the recipients of the fund recovered for the death caused by the defendant's negligent or wrongful act.' The court continues: 'The cause of action never arose until the death of the intestate, and then not to him but to those who are designated by the statute to take the fund recovered. They acquire the right by the statute alone, and not because of any

privity with the intestate, for none such exists between them, in any proper sense of that term.' (*Dowel* v. *City of Raleigh* 173 N. C. 197, 91 S. E. 849; see *Marks* v. *Reissinger,* 35 Cal. App. 44, 169 P. 243; etc.)''

Seè: 10 Cal. Jur. 1105, section 335; 2 Jones on Evidence (2d ed.) p. 1691.

Petitioner did not base her right to the compensation sought on the fact that she was the daughter or heir of Lorenzo Tirado, but on the fact that she depended for her living on the salary earned by the deceased. The Commission did not err when it refused to admit in evidence Tirado's declaration.

2. The second assignment presents a mere question of fact: Was Lorenzo Tirado at the time of his death in the employment of the master? The Industrial Commission after considering the evidence presented by the petitioner decided it in the affirmative. The evidence consisted in the declarations of José Antonio Rodríguez, who works in the accounting department of the Central Rufina; of Zoilo Santos, who was working in the locomotive which caused the accident; of Eustaquio Torres Tirado, son of the deceased; and of the petitioner, all of them to the effect that Lorenzo Tirado, for a long time in the employ of the central, was until the day of the accident working watching the cane to prevent fires and seeing to it that no one stole cane. All this uncontradicted evidence seems to us sufficient to uphold the decision of the Commission, which we should not disturb, because it is the duty of the Commission to consider and weigh the evidence and pass on the credibility of witnesses.

3 and 4. Whether petitioner depended on what the deceased worker earned for her living and whether she was unable to work, are also questions of fact which this court is not authorized to review unless there is a total lack of evidence to sustain the conclusion reached by the Commission.

In the resolution appealed from the Commission expressed itself thus:

"Paula Villot Tirado, daughter of the deceased worker, testified that her father used to give her seventy-five cents every week and sometimes a dollar, for her expenses, and that when this sum was spent before the week was over, she aided herself washing some clothes. for her neighbors, for which she got twenty cents. weekly more or less; that her father used to send said monetary support sometimes with her brother, Eustaquio Torres Tirado, and the rest of the time he himself took it to her. That she is about 60 (and in fact she looks it); that she feels took weak to work regularly; and besides, she has trouble in finding work as a cook, which is her trade, due to a discoloration of her hands which appear white though she is a colored woman.

"Her testimony to the effect that when her father did not go personally to give her her weekly allowance he sent it with her brother, Eustaquio Torres, was corroborated by the latter.

"In our opinion it is clear that Paula Villot Tirado depended substantially for her living on her father's work."

We have examined the evidence and find justified the conclusions of the Commission as to the dependency and inability to work of the petitioner.

■ 5 and 6. These two assignments do not deserve serious consideration. A mere lecture of the statute is sufficient to show the frivolous nature of the issues raised in both assignments.

The Workmen's Compensation Act approved on the eighteenth of April 1935 (Session Laws, p. 250) in its section 3, subsection 5, paragraphs 2, 5 and 6, provides:

"Compensation in Case of Death

"5.— .　　·　　·　　·　　·　　·　　·　　·　　·

"Should the workman or employee leave a widow, parents, legitimate or illegitimate children, posthumous children, whether or not natural or adoptive children, or grandchildren, any of whom were wholly or partly dependent for their support on the earnings of the deceased workman or employee at the time of his death, they shall receive a compensation of from one thousand (1,000) to three thousand (3,000) dollars, which shall be graduated according to the earn-

ing capacity of the deceased workman or employee and to his probabilities of life, in accordance with such rules as the Manager of the State Fund shall prepare . . . .

". . . . . . . . .

"Upon the remarriage of the widow or widower, the part payments awarded for his or her benefit shall cease. They shall likewise cease on the death of any other beneficiary to whom such apart payments are being made, and in the case of minors, such payments shall also cease when such minors reach the age of eighteen (18) years, unless they are disabled for work.

"If the beneficiaries are minors or incapacitated persons, the Manager shall adopt such measures as he may deem proper, and shall take such steps as may be necessary before the courts. . . . ."

The language of the statute is so clear that it does not require great mental effort to see the purpose of the legislator. In our opinion the legislative intention may be expressed as follows:

If a deceased worker leaves a child of more than 18 years of age who is unable to work, and who was totally or partially dependent for his living on what his father earned, that child has the right to receive compensation as provided by the Act, as long as his incapacity lasts and until the sum granted to be paid to the beneficiary is exhausted.

If a deceased worker leaves a child of less than eighteen years of age, said child has a right to compensation if he depended totally or partially on the earnings of his father for his livelihood, without regard to his capacity or incapacity to work. On reaching the age of eighteen the child loses all right to compensation unless it can be shown that he is unable to work.

It was established to the satisfaction of the Industrial Commission that petitioner depended in part for her living on what her father Lorenzo Tirado earned and that said petitioner was unable to work; accordingly, the Commission did not err in upholding her right to receive the compensation provided by the statute.

The decision appealed from is affirmed.