Tompkins, J.,
delivered the opinion of the Court.
Morton files his bill against Massie and others, and had a decree in the Circuit Court of Marion county, sitting as a Court of Chancery, from which Massie appeals to this Court.
Morton charges in his bill, that sometime in the year 1821, one Hugh Shannon; senior, purchased of one John McCune, two certain lots of ground in the town of Palmyra, in said county of Marion; that the deed for said lots was made by Mc-Cune to Hugh Shannon, senior, but that the purchase money was paid by Hugh W. Shannon, junior; and that sometime in the year 1825 or 1826, said Hugh, senior, made his last will and died, devising to said Hugh W., his son, the lots aforesaid; that said Hugh W. had taken possession of said lots and built on them, and hitherto kept possession of them; that the purchase of said lots was made for the use of Hugh W. Shannon, and since the death of Hugh Shannon, senior, his heirs had transferred all the interest they might have in said lots to said Hugh W. Shannon; and that in November, 1829, Morton the complainant became the purchaser of said lots at a Sheriff’s sale, not knowing of any claims or pretensions to them except those of Hugh W. Shannon, against whom the execution aforesaid was issued ¡ that since the time he purchased said lots as aforesaid, the said Massie the defendant who is married to one of the heirs of Hugh Shannon, senior, and who, he was informed and believed, had relinquished his interest in said lots to said Hugh W., had administered on the estate of said Hugh, senior, and claimed to subject the said lots to the payment of the debts of the deceased, and particularly to the payment of one which said Massie claimed to be due to himself from the estate of said deceased, and was proceeding to subject the said lots to the paymeut of such debts as might be proved against the estate of said deceased, and prays that said Massie may be restrained, &c.
Massie answers, admitting himself to be administrator of deceased ; denies that the lots aforesaid were paid for by Hugh W. Shannon, and that the heirs of Hugh, senior, had conveyed all their interest in said lots to said Hugh W. Shannon j he says that he signed an instrument of writing conveying all his right, as distributee of said deceased, in said lots, on condition that all the other distributees would also sign said writing, and upon condition that Hugh W. would satisfy and pay this respond" *339 ent a claim or debt due him from the deceased, to the amount of seven hundred dollars, none of which had been paid, and denies that the complainant was a purchaser without notice, &c., and claims said lots as administrator; he also denies that the deceased made a will.
McCune, a witness, states that he made the contract with Hugh W. Shannon for the lots, and received pay from him; and doe's not know that Hugh, senior, was present at any time, either when the bargain was made or when payment was made, but that the deed was made to Hugh Shannon, Senior. It was proved that in 1819, Hugh Shannon, Senior, moved to Missouri, and in 1821, Massie, the defendant, also came and brought on property for Hugh, Senior, part of which was delivered to McCune in payment for the lots aforesaid.
It was proved by the complainant, that Massie the respondent, had declared that all the property brought by Hugh, Senior, belonged to Hugh W., and that he procured the father to make a deed for a lot which was bought of McCune at the same time the lots in question were, and which he had sold and for which he received the money.
On the contrary it was proved by the respondent that the father was, with great difficulty, prevailed on by his wife to make the deed, and asserted his determination to keep the remainder of the lots for the use of his old age. Hugh W. Shannon testified that the lots in question and others at the same time, were purchased by his father from McCune and paid for by him in property brought from Kentucky as before mentioned; he says it consisted of chains, saddies, bridles, &c., which his brother had sent to his father to satisfy a debt which his brother owed to his father. Witness says he spoke to his father about purchasing the lots, but cannot state whether he alone, his father alone, or both of them together, spoke to John McCune about them.
For the complainant, it is contended that Hugh, the son, having purchased the lots and paid for them, the conclusion necessarily follows that they were purchased with his own funds; and this presumption is strengthened by the declaration of Massie, that all the property brought by Hugh, Senior, to Missouri, belonged to Hugh the son; and consequently, the father would hold the property of the son as trustee for the sons creditors, and they rely on 11 Johnson’s Rep. 91. 16 J. R. 197. 13 same 463.
On the other hand, the counsel for the defendants contend, that the evidence given sufficiently establishes that the property with which the lots were bought, belonged to the father, as it was brought to the country by Massie two years after Hugh Shannon, Sen’r. came, and could not in strict parlance be said to be brought to the country by Hugh Shannon, Sen’r. The circumstance, too, of the deed being made to the father, it was contended, contributed to raise the presumption that the son throughout acted for his father.
It may be observed that the declarations of Massie are not competent testimony in this case. Those of Hugh Shannon, Sen’r. would have been, as they would have been contrary to his own interests; but these declarations of Massie being made in the lifetime of Hugh, Sen’r., were not admissable, but not being objected to, they, as well as much other testimony in this cause, have been acquiesced in by each party by an implied consent. They are certainly edtitled to but very little credit, a careless conversation, perhaps inaccurately repeated, and not well remembered, ought *340 to have but very little weight. Such is the character, we think, of these declarations. We are decidedly of opinion that the weight of testimony is for the defendant, and that the funds with which the lots were purchased belonged to the father. The answer of Massie fully refutes the very slight presumption raised by his declarations in the lifetime of the intestate. That all the property brought by Hugh the father, belonged to Hugh the son. For he denies in the most explicit terms, that the lots were purchased by Hugh the son.
We are moreover of opinion, that his relinquishment to Hugh W., of his distributive share of the lots in right of his wife, would be no bar to his right to subject the same lots to the payment of any just demand he might otherwise have against the estate of the deceased, even had such relinquishment been proved. In our opinion the Circuit Court erred in decreeing for the complainant; its decree is therefore reversed, the injunction dissolved, and the bill dismissed.