LAGATHA McCOMB, MILDRED GUINN McCOMB, an Infant, by WELDON J. McCOMB, Next Friend, and WELDON J. McCOMB, Respondents, v. C. ARTHUR VAUGHN, Appellant.—No. 40867.—218 S. W. (2d) 548.

Division One, January 7, 1949.

Rehearing Denied, March 14, 1949.

952

*Jones & Jones* for appellant.

*Bloodworth & Bloodworth* and *Tedrick & Tedrick* for respondents.

[549] VAN OSDOL, C.—Appeal from judgments for plaintiffs in an action for damages.

The three plaintiffs joined their several claims (Section 16, Civil Code of Missouri, Laws of Missouri, 1943, p. 360, Mo. R. S. A. § 847.16) arising out of a collision of a Harley-Davidson motorcycle, 1938 model, and a "Diamond T" one-ton truck owned and operated by defendant on an east-west gravel highway (County Highway F) in southwest Dunklin County. Plaintiff, Lagatha McComb, stated a claim for the wrongful death of her husband, Robert L. McComb, who was operating the motorcycle and who was fatally injured in the collision. A judgment was rendered upon a verdict for $9000 in favor of the widow, Lagatha. Plaintiff, Mildred Guinn McComb, joined as a plaintiff and stated a claim for personal injury sustained in the collision. She, a sister of deceased, was riding behind him on the motorcycle when the tragedy occurred. Judgment was rendered upon a verdict of $750 in favor of Mildred Guinn. And a judgment for $250 was rendered upon verdict in favor of Weldon J. McComb upon his joined claim for property damage. He, a brother of deceased and of Mildred Guinn, was the owner of the motorcycle involved. The judgment appealed from, for a sum in excess of $7500, in favor of plaintiff Lagatha vests this court with appellate jurisdiction of the case. Section 3, Article V, Constitution of Missouri, 1945.

Defendant-appellant, C. Arthur Vaughn, has assigned errors of the trial court in excluding evidence proffered by defendant, and in refusing to grant a new trial on the assigned ground "of the jury's improper consideration of the question of insurance."

The plaintiffs' causes were submitted to the jury on primary negligence of defendant in turning his truck "to the left and immediately in front of the motorcycle operated by the said Robert L. McComb so the said Robert L. McComb could not avoid a collision with said truck." Defendant in answer to the several claims had alleged and the trial court submitted the negligence of deceased and of the sister, plaintiff Mildred Guinn, in operating and riding on the motorcycle without lights, or "adequate and sufficient lights," as contributing and sole causes of the collision with resulting fatal injury to

Robert, personal injury to Mildred Guinn, and property damage to plaintiff Weldon's motorcycle.

The collision occurred at about 7:43 o'clock the evening of October 14, 1946. It was "good dark."

Evidence was introduced tending to show that deceased, riding the motorcycle, passed through Cardwell at about 7:00 o'clock. It is asserted by defendant that, while at Cardwell, deceased made a statement to one Otis Ward relating to the lights on the motorcycle, which statement is more fully set out infra. Defendant offered testimony tending to prove the asserted declaration, and upon plaintiffs' objection the testimony [550] was excluded by the trial court—this ruling, defendant says, was error.

Upon leaving Cardwell deceased rode the motorcycle to the home of his father, three and a half miles southwest of Cardwell and a half mile west of the scene of the subsequent collision. He ate supper at his father's home and, about 7:30 o'clock, he and his sister Mildred Guinn decided to go to Herod's store, approximately a mile to the eastward, to get some motor oil. They used the motorcycle, Mildred Guinn riding behind her brother. They moved eastwardly on the right (south) side of County Highway F. Defendant's truck was moving westwardly on the same highway. Mildred Guinn testified, "It was dark and we had on the bright lights." When the motorcycle approached the scene of the collision defendant's truck started to turn left into a little dirt road. Mildred Guinn saw the lights (of the truck) make a turn. The motorcycle was then 20 or 25 feet away.

The motorcycle collided with the right-hand side of the truck "in back of the cab."

Defendant testified that, when approaching the scene of the collision, the lights on his truck were in good working order and burning "on dim." Defendant and his brother, P. E. Vaughn; and the brother's two sons, Eulus and Gene, were all seated in the cab of the truck. Defendant was driving; his brother sat in the middle; and Eulus was sitting on the outside holding Gene in his lap. P. E. Vaughn testified he had been watching the road ahead. The first time he saw any indication of any approaching traffic was when the defendant's truck turned to the left; he then saw the motorcycle when it "was just about twenty feet" away. He exclaimed, "Hold it," and then it hit. "I didn't know what hit us until I got out and saw what it was." Defendant testified the first warning he had of an approaching vehicle was when his brother said, "Hold it," and the impact of the collision occurred in "just a very little time at all."

The truck came to a stop on the left (south) side of the road "facing" at about a 45 degree angle to the southwestward, "the whole truck was on the left-hand side of the gravel highway." Several witnesses testified no lights were burning on the motorcycle after the collision. Plaintiff, Weldon J. McComb, testified the fender or mud-

guard of the motorcycle "was pushed up (by the collision) and had pushed it (the motorcycle's headlight) to one side, and that caused it to ground out. . . . I beat the fender and horn down and the light burned."

As mentioned supra, defendant offered to prove by one Otis Ward that he had talked with deceased in Cardwell the evening of October 14th at approximately 7:00 o'clock; that Robert made the statement he had come from Gideon that night on the motorcycle "without any lights on it"; and when "he met on-coming vehicles that it blinded him to the extent that he couldn't see the road or anything else." Plaintiffs' counsel objected to the proffer "as being hearsay and not binding on any of the plaintiffs." The trial court excluded the testimony "as not being made by any party of interest herein and is not against interest and is hearsay." And, as we have said, error is assigned in the exclusion of the proffered testimony.

Defendant-appellant argues that, since the claim of Lagatha was for the wrongful death of her husband under the provisions of the compensatory section of the Wrongful Death Act, Section 3653 R. S. 1939, Mo. R. S. A. § 3653, Lagatha derives her cause of action from whatever cause of action Robert would have had and upon which he could have recovered "if death had not ensued." Appellant says it is clear that any evidence that would be competent against deceased had he survived is competent against plaintiff Lagatha in her action for his wrongful death; and appellant further contends the statement of deceased was admissible under the res gestae rule.

In endeavoring to determine the correctness of the trial court's ruling we notice some differences between an admission of a party, or of one in privity to a party, and a declaration against interest—an exception to the hearsay rule. An admission is competent only when made by a party or by someone identified in legal interest with a party to the action. An admission is admissible although the declarant is available as a witness.

[551] A declaration against interest, however, is in the nature of secondary evidence and admissible only when the declarant is not available as a witness. It is competent in any action in which it is relevant, even though the declarant is not a party or in privity with a party to the action. But the statement of declarant, in order to be admissible as a declaration against interest, must have been adverse to an interest possessed by declarant at the time the statement was made, and the interest must be so apparent as to have presumably been in the mind of declarant, at the time the statement was made. 31 C. J. S., Evidence, §§ 217 and 219, at pages 958-960 and 962-963; Vol. 3, Jones Commentaries on Evidence, § 1166, pp. 2137-2139. See Sutter v. Easterly, 354 Mo. 282, 189 S. W. 2d 284; Wills v. Berberich's Delivery Co., 339 Mo. 856, 98 S. W. 2d 569; Brown v. Holman, 292 Mo. 641, 238 S. W. 1065; Wynn v. Cory, 48 Mo. 346; Morton v.

Massie, 3 Mo. 482; Cape County Sav. Bank v. Wilson, 225 Mo. App. 14, 34 S. W. 2d 981.

In our opinion the deceased's declaration was not admissible as an admission. At the time the declaration by decedent was made there was no claim or cause of action in him or in any of plaintiffs herein. When he was injured a claim for the injury was vested in the deceased and existed in him until his death, when the claim abated. After his death the abated claim was not transmitted to his widow, plaintiff Lagatha, by way of revival or survival of the claim upon which deceased might have recovered had he lived. But, upon his death, a new and distinct cause of action sprang into being and accrued to plaintiff Lagatha. This occurred only upon the death of deceased and by virtue of statute. Sections 3653, 3654 and 3652 R. S. 1939, Mo. R. S. A. §§ 3658, 3654 and 3652. Entwhistle v. Feighner, 60 Mo. 214; State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S. W. 51; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. 2d 920; Goldschmidt v. Pevely Dairy Co., 341 Mo. 982, 111 S. W. 2d 1; Glasgow v. City of St. Joseph, 353 Mo. 740, 184 S. W. 2d 412; Baysinger v. Hanser, 355 Mo. 1042, 199 S. W. 2d 644. It seems to us deceased in his lifetime could not have had any identity as one in privity, in any legal sense, with plaintiff Lagatha in her new and distinct cause of action which arose and accrued to her only upon his death and only by virtue of statute.

Defendant-appellant has cited cases decided by the appellate courts of other states. For example, see Hovey v. See (Ct. of Civ. App. of Texas), 191 S. W. 606; Helman v. Railway Co., 58 Ohio St. 400, 50 N. E. 986; and Georgia R. R. & Banking Co. v. Fitzgerald, 108 Ga. 507, 34 S. E. 316, in which cases the reviewing appellate courts have recognized privity existant between plaintiffs' decedents and the plaintiffs in plaintiffs' claims under wrongful death statutes. Admittedly these cases are not in harmony with our view, hereinbefore expressed, in such respect. Nevertheless, in all of the cases cited, the declarations of the decedents were admissible, in our opinion, as declarations against interest, because in all instances the declarations were against the pecuniary or proprietary interests of the declarants-decedents *at the time the declarations were made*. A reading of the several cases discloses the statements of the plaintiffs' decedents were made after they were injured and when there were vested in them pecuniary and proprietary interests in their own claims for their personal injuries. Although their claims abated upon their subsequent deaths, their declarations, having been opposed to their pecuniary or proprietary interests when made, were admissible even though the respective decedents-declarants were not held to have been in privity with the respective plaintiffs. See Reed v. Philpot's Adm'r., 235 Ky. 429, 31 S. W. 2d 709, cited by defendant-appellant. Plaintiffs-respondents have cited the case of Dowell v. City of Raleigh, 173 N. C. 197, 91

S. E. 849, an action under the wrongful death statute of North Carolina. Plaintiff's intestate had been fatally injured when his wagon ran into excavations in the city street. He died within a few minutes after he was injured. He had apparently made a statement, before his injury, relating to his wagon's defective condition. Upon plaintiff's appeal from a judgment for defendant [552] it was held by the Supreme Court of North Carolina that the trial court had erred in admitting the declaration into evidence. Said the court,

"The declaration of the intestate as to the condition of the wagon was incompetent. It was not a declaration against interest, as at that time he had no interest to serve or disserve. He had no cause of action himself, as his death was instantaneous, nor did he even have any interest in this cause of action. It is one not known to the common law, but created by the statute, and the beneficiaries take, not by any inheritance or succession from him, but solely because they are named in the statute as the recipients of the fund recovered for the death caused by the defendant's negligent or wrongful act. The cause of action never arose until the death of the intestate, and then not to him but to those who are designated by the statute to take the fund recovered. They acquire their right by the statute alone, and not because of any privity with the intestate, for none such exists between them, in any proper sense of that term."

██ Likewise, in the instant case, at the time of the declaration to Otis Ward no injury had been sustained by deceased. Obviously, the statement of deceased was made at a time when deceased had no pecuniary or proprietary interest in any claim for his injury. And no other pecuniary or proprietary interest then in deceased is shown in the record or suggested which the alleged statement disserved. However, it is true the facts assertedly stated to Otis Ward would tend to show deceased, in his movement from Gideon to Cardwell, had violated the provision of statute requiring that a motorcycle while on the highway between stated times shall display a light (Section 8386d R. S. 1939, Mo. R. S. A. § 8386d) and deceased might have been subjected to prosecution [Subsection (d), Section 8404 R. S. 1939, Mo. R. S. A. § (d) 8404] for the violation. Compare Sutter v. Easterly, supra.

██ Even though the deceased's statement were considered a declaration against interest, the defendant was not prejudiced by the trial court's exclusion of the statement. The statement would tend to show that deceased had negligently operated the motorcycle without lights in his movement from Gideon to Cardwell. Such evidence of prior negligence was collateral to the issues of the case. The statement related to another journey and to the condition of the motorcycle when operated during the journey. The remoteness of time from the circumstances of the collision and the interruptions of the continuity of the movement of deceased at Cardwell and at his father's home prior to

the time of the collision would, in our opinion, render the statement insufficient in value to justify its reception into evidence, and its reception into evidence could have been highly prejudicial to plaintiffs. The courts have generally ruled inadmissible on the issue of negligence on the part of defendant in a negligence action, or of contributory negligence on the part of plaintiff, at the time of the injury complained of, evidence of similar prior acts of negligence. 38 Am. Jur., Negligence, § 316, p. 1015; Vol. 2, Jones Commentaries on Evidence, 2d Ed., § 687, p. 1279. And see generally Hawkins v. Missouri Pac. R. Co., 182 Mo. App. 323, 170 S. W. 459; Hodges v. Hill, 175 Mo. App. 441, 161 S. W. 633; Calcaterra v. Iovaldi, 123 Mo. App. 347, 100 S. W. 675. It has been said, "the admissibility of proof of the collateral act depends finally on the cogency of the proof it affords regarding the main issue—on whether it is so closely related to the main issue that its value as evidence is high enough to justify disregarding the objections to the reception of proof of collateral acts." Goode, J., in Calcaterra v. Iovaldi, supra, 123 Mo. App. at page 351, 100 S. W. at page 676.

One class of statements admissible under the res gestae rule are those declarations made immediately preceding or preparatory to a particular litigated act which tend to explain, illustrate and give character to the act. Edwards v. Ethyl Gasoline Corporation, 342 Mo. 98, 112 S. W. 2d 555; Nelson v. Wabash R. Co., Mo. App., 194 S. W. 2d 726; Nanney v. I. H. Shell & Son, Mo. App., 138 S. W. 2d 717; 10 R. C. L., § 161, pp. 978-980; Vol. 3, Jones Commentaries on Evidence, 2d Ed., § 1194, p. 2190. The prior declaration of [553] deceased to Otis Ward certainly could not be considered in such a close relationship with the collision as to be considered as a part of it. The statement was not made contemporaneously with or immediately preceding or preparatory to the movement eastward en route to Herod's store, nor was the statement made in contemplation of or in connection with the use of the motorcycle in the movement to the store. The declaration was but a narrative of deceased's movement from Gideon to Cardwell which was, in point of time, it seems, over half an hour before deceased and his sister started to make their visit to the store, and after the supper at the father's home. There was no such immediate or close connection with the circumstances of the litigated act as to make the declaration practically inseparable from the litigated act, event or occurrence, and, in our view, the declaration was not admissible under the res gestae rule.

On voir dire examination the veniremen were asked concerning their possible connection with the insurance company which had insured defendant against liability in the operation of his truck (White v. Teague, 353 Mo. 247, 182 S. W. 2d 288). After the issues of the cause had been submitted to the selected and qualified jury and during the jury's deliberations, the jury requested "additional information." A

juror stated, "We would like to know if·there is any insurance company back of this case." The trial judge replied,

"You have heard the evidence and I cannot advise you. The only thing the jury can go on is the evidence as you received it in the court. The court is just like the jury, it is bound by the evidence they hear from the witness stand and if I was a member of the jury I would undertake to decide this on that evidence and that alone. You may now return to your jury room."

Defendant contends it is clear the jurors were discussing and considering the question of insurance in deliberating upon their verdicts, and that the record clearly reflects defendant had "a jury that was unwilling under the evidence to render a verdict against him; but if an insurance company was going to pay it, and the defendant would not be hurt by such a verdict, then the jury was willing to render verdicts against the defendant." But defendant does not point out any error of the trial judge in making his reply to the juror's question, and defendant does not contend the matter of insurance was improperly injected into the case. Having in mind the substantial evidence disclosed in the record tending to sustain the verdicts for plaintiffs, we could not say the verdicts were in any way induced by a consideration by the jury of defendant's insurance merely because of the jury's request for the "additional information." And we further note the trial judge's advice to the jury that the case should be decided on the "evidence and that alone." We rule the contention adversely to defendant.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER ·CURIAM:—The foregoing opinion by VAN OSDOL, C, is adopted as the opinion of the court. All the judges concur except *Conkling, J.,* who concurs in result only.