237 S.W.2d 210 (1951)
MOORE
v.
METROPOLITAN LIFE INS. CO.
No. 27977.
St. Louis Court of Appeals, Missouri.
February 20, 1951.
*211 Fordyce, Mayne, Williams & Hartman, and Thomas Rowe Schwarz, all of St. Louis, for appellant.
Henry D. Espy, St. Louis, for respondent.
BENNICK, Judge.
This is an action upon a group accidental death policy insuring the employees of the Statler Hotel Corporation, including one Julia Moore, who met her death on February 9, 1949, as the result of a stab wound received in an altercation with a woman named Irma Harold in the block on Twenty-first Street between Market and Walnut Streets in the City of St. Louis.
Each employee covered by the policy had been issued an individual certificate; and under the certificate which had been issued to her, Julia Moore had designated as beneficiary her daughter, Gloria. This action is brought by Gloria Moore against the insurer, Metropolitan Life Insurance Company, to recover the accidental death benefit of $1,000 along with the statutory penalty and an attorney's fee for alleged vexatious refusal to pay.
Originating in the magistrate court, the case went on appeal to the circuit court, where there was a verdict for plaintiff for the death benefit of $1,000 together with interest of $40 and an attorney's fee of $200. Judgment was thereupon rendered for plaintiff, and against defendant, for the aggregate amount of $1,240; and following an unavailing motion for a new trial, defendant gave notice of appeal, and by subsequent steps has caused the case to be transferred to this court for our review.
There were apparently no eyewitnesses to the affray, which occurred about 11:15 o'clock at night.
In response to calls a number of police officers went to the scene, where they found Julia Moore lying in the street unconcious with her head resting in the arm of Irma Harold, who was kneeling down beside her. Upon being interrogated as to what had occurred, Irma Harold handed one of the officers a knife and a pair of scissors, and stated that she had stabbed Julia Moore with the knife, and that the latter had been stabbing at her with the scissors. The court admitted the testimony as to what Irma Harold had said upon the theory that her statements had constituted a part of the res gestae.
While the officers noticed quite a bit of blood on the street, there was none to be observed on Irma Harold until she was taken under arrest to the police station where it was discovered that she too had a stab wound on her person. Julia Moore had meanwhile been taken direct to the hospital, where she was pronounced dead upon arrival. While under detention at the station Irma Harold was subjected to further interrogation by the police, and some two hours after her arrest she gave a more complete and detailed statement which was taken down and embodied in a police report, a copy of which was supplied the coroner for inclusion in the transcript of the coroner's inquest.
One of defendant's inspectors conducted an investigation of the claim, and in the course of his investigation procured a copy of the transcript of the coroner's inquest. Defendant afterwards denied the claim; and upon payment being refused, this action followed.
On two separate occasions defendant sought unavailingly to introduce the transcript of the coroner's inquest in evidence. Whether the transcript was to be admitted depended of course upon the competency of the statement of Irma Harold which she had given the police while she was being held at the station after Julia Moore's death. When put upon the stand as a witness for defendant, Irma Harold had refused to testify upon the ground that any testimony she would give might tend to incriminate her; and with her testimony thus made unavailable, defendant offered her statement in evidence, apparently upon the theory that the statement was thereby rendered competent as a declaration against the interest of the witness. Such offer being refused, defendant later asked permission to introduce the statement upon the specific issue of vexatious refusal to *212 pay. This offer was likewise refused; and the action of the court in both respects is assigned as error on this appeal.
It is to be borne in mind that the fundamental fact issue in the case was that of who had been the aggressor in the fight that had led to Julia Moore's death. If Irma Harold was the aggressor, Julia Moore's death was by accidental means within the coverage of the policy. On the other hand, if the insured, Julia Moore, was herself the aggressor, and if her conduct was of such a character as to have charged her with reasonable anticipation that it would be met by such violent resistance on Irma Harold's part as to have put her in danger of death or great bodily harm, then in that event her death would be regarded as the natural and probable consequence of her own voluntary conduct, and not as having been sustained by accidental means within the purview of the policy. Podesta v. Metropolitan Life Ins. Co., Mo.App., 150 S.W.2d 596; Sellars v. John Hancock Mut. Life Ins. Co., Mo.App., 149 S.W.2d 404; Russell v. Metropolitan Life Ins. Co., Mo. App., 149 S.W.2d 432; Camp v. John Hancock Mut. Life Ins. Co., Mo.App., 165 S.W. 2d 277.
In this case Irma Harold's statement was to the effect that Julia Moore had been the aggressor in that she had first stabbed at Irma Harold with the scissors, and then had pursued her in her flight until Irma Harold had turned and stabbed her with a knife which she had meanwhile extracted from her purse while she had been running across the street with Julia Moore close behind her. Obviously such statement would have been greatly to defendant's advantage in making its defense if the statement could have been received in evidence as proof of the facts which it purported to recite.
Differing from an admission, a declaration against interest is admissible as an exception to the hearsay rule notwithstanding the fact that the declarant is neither a party nor in privity with a party to the action. McComb v. Vaughn, 358 Mo. 951, 218 S.W.2d 548; 31 C.J.S., Evidence, § 217b. But being an inferior grade of evidence, it is admissible only when the declarant himself is not available as a witness. McComb v. Vaughn, supra; 31 C.J.S., Evidence, § 218a; 20 Am.Jur., Evidence, § 556. As to what amounts to unavailability, the courts are not in complete accord. However we are only concerned in this case with the question of whether a witness is unavailable when he refuses to testify upon the ground that he might incriminate himself; and whatever the rule may be elsewhere, it has been held in this state that such fact is sufficient to warrant the admission of his declaration against interest. In other words, having regard for the principle of necessity which justifies resort to secondary evidence, a witness who stands upon his constitutional rights is, as a practical proposition, just as fully unavailable as though he were insane or dead or prevented from testifying because of some other acceptable reason. Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284, 162 A.L.R. 437.
Similarly it is not necessary in this state that the interest of the witness be limited to something either pecuniary or proprietary, but it no less supports the admission of his declaration if the same was against his penal interest. The basis for the admission of the declaration is that being against the declarant's interest, it would not have been made if it had not been true; and if his declaration is, on that account, to be received in evidence where it is against a mere pecuniary or proprietary interest, there would seem to be no sound reason why it should not be equally admissible where it would subject the declarant to a criminal liability. Sutter v. Easterly, supra.
That Irma Harold's statement related to her penal interest is of course not open to dispute. However it is not enough to warrant the admission of a declaration that it should have pertained to a proper character of interest unless such interest was adverse to the declarant at the time. As pointed out above, the reliability of a declaration depends upon the fact that one does not ordinarily assert things as true which are against his own interest. It is *213 this fact, based upon common experience, which justifies the admission of such a declaration as an exception to the hearsay rule. But in this case Irma Harold's statement to the police was not against her penal interest, but on the contrary was in her own favor and distinctly self-serving. Instead of subjecting her to possible criminal liability, it was calculated to make out a case of self-defense. It branded Julia Moore as the aggressor, and was designed to exonerate Irma Harold from all blame for the homicide which occurred. Under such circumstances the declaration was not admissible in proof of the facts which it purported to recite, and the court ruled properly in excluding it in so far as it was offered for such general purpose.
But though the court was right in not allowing the declaration to be admitted as evidence of the truth of what Irma Harold had told the police, the same is not to be said for its action in excluding the declaration when it was offered upon the specific issue of vexatious refusal to pay.
The latter was an issue which plaintiff had raised, and upon which defendant was entitled to defend by showing, if it could, that in denying liability it had acted in good faith and upon reasonable grounds for believing that the insured, Julia Moore, had been the aggressor so that her death could not be said to have been sustained by accidental means. Such fact was only to be shown by proof of the evidence upon which defendant had acted, which included Irma Harold's statement to the police. If what Irma Harold had said was true, defendant was not liable on the policy; nor was her statement rendered any the less true on the face of things because defendant might have anticipated difficulty in getting it before the jury. The statement itself and defendant's knowledge of it were relevant to the question of whether defendant had had fair reason for believing that it was actually not liable under the facts of the case; and the transcript of the coroner's inquest, which included Irma Harold's statement, should have been admitted in evidence for such limited purpose. Scott v. Missouri Ins. Co., Mo.Sup., 233 S.W.2d 660.
Other points assigned as error and not specifically referred to herein may not appear upon a retrial of the case.
It follows that for the error noted the judgment rendered by the circuit court should be reversed and the cause remanded, and it is so ordered.
ANDERSON, P. J., and McCULLEN, J., concur.