UNITED SERVICES OF AMERICA,
INC., Plaintiff-Appellant,

v.

EMPIRE BANK OF SPRINGFIELD,
Missouri, Defendant-Respondent.

No. 14261.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 17, 1987.

Motion for Rehearing or to Transfer
to Supreme Court Denied
March 9, 1987.

Application to Transfer Denied
April 14, 1987.

Donald W. Jones, Steven E. Marsh, Hulston, Jones & Sullivan, Springfield, for plaintiff-appellant.

William A.R. Dalton, Bill Clampett, Springfield, for defendant-respondent.

L. THOMAS ELLISTON, Special Judge.

This case was submitted to a jury on a fraudulent misrepresentation theory seeking actual and punitive damages. The jury returned a verdict in favor of defendant, Empire Bank of Springfield, Missouri (Empire), and against plaintiff, United Services of America, Inc. (United).

On appeal, United alleges the trial court erred in failing to sustain its motion for a directed verdict, in refusing to admit into evidence portions of depositions of two of Empire's officers, and made other errors in evidentiary rulings which require a new trial. We reverse because the trial court erred in refusing to allow the depositions in question in evidence.

The facts necessary for understanding the disposition of this appeal are as follows. United is a closely held Texas corporation that is owned by Richard P. Dunn and his family. Empire is a bank located in Springfield, Missouri.

In February, 1982, Empire became the owner, through repossession, of a 1952 De-Havilland Dove airplane. At the time of the repossession, the airplane was partially dismantled; some of the engine accessories were missing, and the landing gear was not functional. The airplane was not in an airworthy, flying condition. Empire attempted to sell the airplane, and placed ads in various aviation magazines, one being the April 1983 edition of "Trade-A-Plane." In that issue, Empire advertised the plane for sale as a 1958 DeHavilland Dove that they had repossessed, with a selling price of $60,000. A phone number was furnished for anyone seeking additional details and bid information.

David Thater, a loan officer of Empire, was in charge of selling the airplane. He had been given complete authority by Empire to do whatever he deemed appropriate in selling the airplane, and had placed the ad in Trade-A-Plane. Thater had prepared a list of specifications concerning the airplane which was sent, along with photographs, to prospective purchasers. Empire received no firm offers for the airplane from the time of its repossession in February 1982, until United's offer in April, 1983.

Richard Dunn, an owner and officer of United, contacted Thater on April 18, 1983, and requested information regarding the airplane. Dunn had become aware of the airplane's availability because of the Trade-A-Plane advertisement. Dunn told Thater he was seeking a good, safe, reliable airplane for his family use as transportation between their homes in Texas and Mexico. Thater sent Dunn information concerning the airplane, including photocopied pictures of the airplane, a list of equipment and specifications, and two written memorandums concerning the sale of the airplane. One of the memorandums was from David Thater and stated that Empire was scheduling the sale of the airplane "on or before Wednesday, April 27 1983," and "[a]ny reasonable bid will be accepted."

On Thursday, April 21, 1983, Dunn talked to Thater by telephone about the airplane. Dunn testified that Thater told him that the airplane was in good condition and flyable when it was repossessed. Dunn offered Empire $40,000 cash for the airplane. Thater, on behalf of Empire accepted Dunn's offer. Dunn wire-transferred the $40,000 to Empire on Friday, April 22, 1983, and flew to Springfield on Saturday, April 23, 1983, for the purpose of looking at the airplane, and having it flown out of Springfield.

Upon arriving in Springfield, Dunn learned that the airplane could not be flown, for various reasons, including that

the last inspection, required by the Federal Aviation Agency to be done annually, had taken place on February 10, 1981. Thater had purposely not informed Dunn of the date of the last annual inspection because he wanted to emphasize the positive aspects of the airplane. Dunn then incurred $33,804.16 expense for work and repairs on the airplane and discovered that it would cost an additional $15,000 to $25,000 to get the airplane airworthy.

United then brought this action against Empire alleging in the alternative a count for breach of implied warranty of fitness for a particular use, a count for breach of express warranty, and a count for fraudulent misrepresentation. At the close of all of the evidence, United made a motion, which was overruled, for a directed verdict on all three counts. United submitted the fraudulent misrepresentation theory to the jury seeking actual and punitive damages. The jury returned a verdict for Empire. This appeal followed.

United alleges that the trial court erred in failing to sustain its motion for a directed verdict at the close of all of the evidence. In determining whether the trial court so erred, the evidence is viewed most favorably to Empire, the party opposing the motion. *Fleischmann v. Mercantile Trust Co. Nat. Ass'n,* 617 S.W.2d 73, 73 (Mo.banc 1981); *Consol. Public Water Supply v. Farmers Bank,* 686 S.W.2d 844, 849 (Mo.App.1985); *Green v. Crunden Martin Mfg. Co.,* 575 S.W.2d 930, 932 (Mo. App.1978).

It is a long established rule in Missouri that a trial court will very seldom be justified in directing a verdict in favor of a party having the burden of proof, where that party relies on oral testimony to carry the burden of proof. *Helfrick v. Taylor,* 440 S.W.2d 940, 943 (Mo.1969); *Beezley v. Spiva,* 313 S.W.2d 691, 695 (Mo.1958); *Cluck v. Abe,* 328 Mo. 81, 40 S.W.2d 558, 559 (1931). Stated in another manner:

> The general rule is that where the proof of a party asserting the affirmative of a determinative issue is oral, such party is not entitled to a directed verdict

although the opposing party offers no evidence, because the value and weight of the proponent's evidence and the credibility of his witnesses is for determination by the jury.... 'Ordinarily it is the function of the jury to pass upon all oral evidence, and in doing so it may find against a party on his uncontradicted and unimpeached evidence.' (Citations omitted.)

*Ferguson v. Boyd,* 448 S.W.2d 901, 903 (Mo.1970); *Beezley v. Spiva,* supra, 313 S.W.2d at 695.

■ Of course, there is an exception to that general rule when there is no real dispute of the basic facts essential to establish the claim being advanced by the person having the burden of proof. *Ferguson v. Boyd,* supra, 448 S.W.2d at 903; *Consol. Public Water Supply v. Farmers Bank,* supra, 686 S.W.2d at 849. *Rogers v. Thompson,* 364 Mo. 605, 265 S.W.2d 282, 287 (banc 1954), states the exception in the following language:

> This general rule is not applicable in unusual situations where defendant in his pleadings or by his counsel in open court admits plaintiff's claim ..., or by his evidence also establishes plaintiff's claim, or where there is no real dispute of the basic facts supported by uncontradicted testimony essential to a claim or an affirmative defense. (Citations omitted.)

■ The elements of causes of action for breach of an implied warranty of fitness for a particular purpose under § 400.2–315;[1] breach of an express warranty under § 400.2–313; and, fraudulent misrepresentation are found in MAI 3d. Edition 25.03, 25.07 and 23.05. Each cause of action contains elements that are normally only proven by oral testimony and reasonable inferences the finder of fact may derive from the evidence, such as "plaintiff reasonably relied," "within a reasonable time," "was a material factor in plaintiff's decision," "the representation was material to purchase by plaintiff," and "plaintiff was using ordinary care." A thorough review of the

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

transcript in this case reveals that United relied heavily on oral testimony; that Empire did not admit United's claims in the pleadings, or in open court; and, that there was a real dispute of the basic facts essential to support United's claim. The trial court did not err in denying United's motion for directed verdict filed at the close of all of the evidence.

We next consider whether the trial court erred in refusing to admit into evidence portions of certain depositions offered by United. Rick Watts was a senior vice-president of Empire, and United had taken his deposition twice, first on April 17, 1984, and again on November 19, 1984. On the same dates, United had also taken the deposition of David Thater, a loan officer of Empire. Prior to trial, United made the following request for admissions of Empire, and received the indicated responses:

1. That at the time of the taking of his deposition on April 17, 1984, Rick Watts was an officer and agent of Empire.

Response: Admitted.

2. That at said time Watts was authorized to make each of the statements he made in response to the questions he made on behalf of Empire, and as an officer and agent of Empire.

Response: Admits the deponent was authorized to give his deposition and was expected to truthfully answer all questions propounded to him.

3. That at the time of the taking of his deposition on November 19, 1984, Rick Watts was an officer and agent of Empire.

Response: Admitted.

4. That at said time, Watts was authorized to make each of the statements he made in response to the questions propounded to him in said deposition.

Response: Admits that deponent was authorized to give his deposition and was expected to truthfully answer all questions propounded to him.

5. That David M. Thater was an officer of Empire at the time he gave his deposition on April 17, 1984.

Response: Admitted.

6. That each of the statements made by David M. Thater in the portions of his deposition designated under Part II of Exhibit B attached hereto were made as statements which David M. Thater was authorized to make as an agent and officer and employee of Empire within the scope of his employment for said defendant.

Response: Admits that deponent was authorized to give his deposition and was expected to truthfully answer all questions propounded to him.

7. That at the time of the taking of his deposition on November 19, 1984, David M. Thater was an officer and agent of Empire.

Response: Admitted.

8. That at said time, David M. Thater made statements in response to questions in said deposition as shown at page 19, lines 3 through 16 of said deposition as an authorized representative of Empire within the scope of his authority as an agent for said bank.

Response: Admits that deponent was authorized to give his deposition and to truly answer all questions propounded to him.

United sought to introduce these requests for admissions and responses into evidence as a foundation for the introduction of portions of the depositions of Watts and Thater. Empire objected on the grounds that "lack of foundation of authority to make an admission on behalf of defendant," and the offered matters "did not constitute admissions of fact or admissions against interest." The trial court sustained Empire's objections stating that there had been no showing that Watts and Thater had authority to make admissions on behalf of Empire, and also that both witnesses were available to testify.

Missouri attorneys, and sometimes the courts, often use the terms "admissions against interest," and "declarations against interest" interchangeably. This causes unnecessary confusion and uncertainty as to what the speaker is attempting to communicate. The appellate courts of this state have long recognized that there is a valid distinction between "admissions against interest" and "declarations against interest."

See, e.g., *Carpenter v. Davis*, 435 S.W.2d 382, 384 (Mo.banc 1968), and *Neely v. Kansas City Public Service Co.*, 241 Mo.App. 1244, 252 S.W.2d 88, 91 (1952). The confusion caused by not recognizing this distinction might be avoided if the "admission against interest" was referred to as an "admission by party-opponent," as is done in Rule 801 of the Federal Rules of Evidence and Missouri Evidence Restated, § 803–25 (1984). Party-opponents in litigation make admissions while people that are not parties to the litigation make declarations.

■ Many Missouri cases contain excellent discussions of a declaration against interest by a non-party as an exception to the hearsay rule. See, e.g., *McComb v. Vaughn*, 358 Mo. 951, 218 S.W.2d 548, 550–552 (1949); *Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284, 288–289 (1945); and *Neely v. Kansas City Public Service Co.*, supra.

There are four requirements necessary to admit a declaration against interest:

(1) unavailability of the declarant as a witness,

(2) declaration relates to a fact against the apparent pecuniary, proprietary or penal interest of the declarant when made,

(3) declaration concerns a fact personally cognizable by declarant, and

(4) declaration made under circumstances which render it improbable that a motive to falsify exists.

*State v. Grant*, 560 S.W.2d 39, 43 (Mo.App. 1977). These requirements were clearly not met in the instant case because both Watts and Thater were available and did, in fact, testify. Thus, the trial court did not err in refusing to allow the depositions to be used as declarations against interest.

■ The requirements of an admission against interest, sometimes simply called an "admission" in Missouri cases, and called in modern authorities an "admission by party-opponent," are substantially different. There are three requirements necessary to admit an admission by a party-op-

ponent: 1) a conscious or voluntary acknowledgment by a party-opponent of the existence of certain facts; 2) the matter acknowledged must be relevant to the cause of the party offering the admission, and 3) the matter acknowledged must be unfavorable to, or inconsistent with, the position now taken by the party opponent. The availability of the witness is not a factor when considering the admissibility of an admission by a party-opponent. *Albertson v. Wabash R. Co.*, 363 Mo. 696, 253 S.W.2d 184, 189 (1952); *Grodsky v. Consolidated Bag Co.*, 324 Mo. 1067, 26 S.W.2d 618, 621 (1930); *Black v. Epstein*, 221 Mo. 286, 120 S.W. 754, 759 (1909); *Sparr v. Welman*, 11 Mo. 230, 234 (1847).

"An admission is competent only when made by a party or by someone identified in legal interest with a party to the action. An admission is admissible although the declarant is available as a witness." *McComb v. Vaughn*, supra, 218 S.W.2d at 550.

■ Watts and Thater are clearly not parties to the litigation. Empire is the party to the litigation, but is a corporation that can only speak through persons that are its officers, agents, or employees. The Missouri Rules of Civil Procedure recognized this disability of a corporation not being a natural person by allowing a party in a notice and subpoena to take a deposition to name a corporation as the deponent and require that the corporation designate "one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf...." Rule 57.-03(b)(4).[2] Rule 57.07(a)(2) also recognizes this disability by stating, "The deposition of a party, or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 57.03(b)(4) ... to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party, may be used by an adverse party for any purpose." In other words, the deposition of (1) a party, (2) an officer, director or managing agent of a party, or (3) a person designated

2. All references to rules are to Missouri Rules of Court, V.A.M.R.

in accordance with the rules by a non-person party may be used by an adverse party for any purpose.

In this case, plaintiff clearly established with the above-mentioned request for admissions and responses that Watts and Thater were officers of Empire. That is a sufficient foundation of authority for Watts and Thater to make an admission on behalf of Empire, because Rule 57.07(a)(2) allows their depositions to be used by plaintiff, the adverse party, for any purpose. We have examined the portions of the depositions offered by plaintiff and find that they are admissible as admissions by a party-opponent. The trial court erred in excluding that evidence.

Empire contends that in any event there was no prejudice to United because both Watts and Thater testified in the case, and were fully examined and cross-examined as to all matters and things within their knowledge. However, a party has a right to present its case in any judicially acceptable manner that the party chooses. If the same evidence is available to a party through both live testimony of its party-opponent and admission by its party-opponent from a deposition, the party, as part of its trial tactics and strategy, may properly elect to present the evidence by way of deposition. In this case, it is apparent from the record that plaintiff had elected to present admissions of its party-opponent by using depositions of Watts and Thater. Plaintiff had a right to do so and the trial court's refusal to allow this procedure was prejudicial error. *Pulitzer v. Chapman*, 337 Mo. 298, 85 S.W.2d 400, 411–412 (1935); *Wilt v. Moody*, 254 S.W.2d 15, 18 (1953); *Teachenor v. DePriest*, 600 S.W.2d 122, 125 (Mo.App.1980).

In its brief, plaintiff complains that the trial court made other errors in evidentiary rulings, and the cumulative effect of those errors require that plaintiff have a new trial. We have examined the alleged errors, and find no prejudicial error was committed by the trial court.

Plaintiff also asks us to consider certain matters under the plain error rule, Rule 84.13(c). These matters were either not objected to by plaintiff at the time of trial, or not raised by plaintiff in its motion for new trial. We have carefully examined those matters and find that there were no plain errors affecting substantial rights. The plain error rule is not intended to further a judicial exercise in nit-picking, *Misch v. C.B. Contracting Company*, 394 S.W.2d 98, 102 (Mo.App.1965), but is reserved for those situations in which hatred, passion or prejudice has been engendered, causing manifest injustice or a miscarriage of justice. *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo.App.1980); *Sterling v. Thomas*, 657 S.W.2d 57, 58 (Mo.App.1983).

The trial court committed prejudicial error in refusing to allow the plaintiff to use portions of certain depositions of two officers of defendant as admissions by a party-opponent. For this reason, we reverse and remand this case for a new trial on all issues.

GREENE, P.J., and HESS and HENRY, Special Judges, concur.